1  HANSON BRIDGETT LLP
   DAVINA PUJARI, SBN 183407
2  dpujari@hansonbridgett.com
   MEGAN OLIVER THOMPSON, SBN 256654
3  moliverthompson@hansonbridgett.com
   GEOFFREY R. PITTMAN, SBN 253876
4  gpittman@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone:   (415) 777-3200
6  Facsimile:   (415) 541-9366

7  Attorneys for Defendants TETRA TECH, INC.
   and TETRA TECH EC, INC.
8

9                         UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

| JOHN WESLEY DARDEN, JR., | Case No. |
|---|---|
| Plaintiff, | **DEFENDANT TETRA TECH EC, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1441(a) AND 1442(a)(1)** |
| v. | |
| TETRA TECH, INC.; TETRA TECH EC, INC.; LENNAR CORPORATION; HPS1 BLOCK 53 LLC; FIVEPOINT HOLDINGS, LLC; BILL DOUGHERTY; NICK ZAFERES; EMILE HADDAD; and DOES 1-100, | [Removed from San Francisco Superior Court Case No. CGC-18-571265] |
| Defendants. | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF JOHN WESLEY DARDEN, JR.:**

PLEASE TAKE NOTICE that Defendant TETRA TECH EC, INC. ("Tetra Tech") hereby removes to this Court the state court action *John Wesley Darden, Jr. v. Tetra Tech, Inc., et al.*, San Francisco County Superior Court Case No. CGC-18-571265.

This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and which may be removed to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1442(a)(1).

Tetra Tech hereby provides this "short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a).

## I. INTRODUCTION AND CASE OVERVIEW

1. On November 13, 2018, Plaintiff John Wesley Darden, Jr. initiated a civil action against Tetra Tech and several other parties in the Superior Court of California for the County of San Francisco, entitled *John Wesley Darden, Jr. v. Tetra Tech, Inc., et al.*, Case No. CGC-18-571265 ("Complaint"). A true and correct copy of the Complaint is attached hereto as Exhibit A.

2. The Complaint alleges that the home that Plaintiff purchased on Parcel A of the Hunters Point Naval Shipyard ("HPNS") in San Francisco, California has diminished in value due to the alleged continuing environmental toxicity of the HPNS property. The Complaint alleges permanent public nuisance, permanent private nuisance, negligence, negligent misrepresentation, and violations of the California Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* ("UCL") and the California False Advertising Law, California Business & Professions Code § 17500 *et seq.* ("FAL") in connection with the radiological remediation of HPNS and the redevelopment of HPNS for residential and retail purposes. (Compl., ¶¶ 109-186.)

3. Based on his allegations, Plaintiff seeks declaratory relief, as well as compensatory damages, restitution damages, diminution in property value damages, punitive damages, plus interest, costs, and attorney's fees. (Compl., p. 46.)

4. Per agreement of the parties, Plaintiff's counsel mailed a copy of the Complaint to Tetra Tech's counsel on or about December 17, 2018, using Notice and Acknowledgment of Receipt. Service was deemed complete on December 20, 2018, when Tetra Tech's counsel executed the Notice and Acknowledgement of Receipt and returned it by mail. A true and correct copy of the executed Notice and Acknowledgment of Receipt demonstrating service on Tetra Tech is attached as Exhibit B.

## II. VENUE AND INTRADISTRICT ASSIGNMENT

5. Removal to the United States District Court for the Northern District of California is proper under 28 U.S.C. § 1446(a) because this is the District within which the state court action is pending.

6. Pursuant to Civil Local Rule 3-2(c), assignment to the San Francisco or Oakland Division of the United States District Court for the Northern District of California is appropriate because a substantial part of the events or omissions which gave rise to Plaintiff's claims are alleged to have occurred in the County of San Francisco, and a substantial part of the property that is the subject of the action is situated in the County of San Francisco.

### III. JURISDICTION

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because: (1) Tetra Tech is being sued for remediation work it performed at the direction of and while under contract with the Navy, thus immunizing Tetra Tech from liability for state law claims; and (2) Plaintiff's claims arise from alleged acts occurring on a federal enclave, HPNS, over which federal courts have exclusive jurisdiction to adjudicate claims for relief.

### IV. GROUNDS FOR REMOVAL

8. Tetra Tech asserts two independent bases for removing this action to this Court. First, Tetra Tech removes this action pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). Second, Tetra Tech removes this action pursuant to 28 U.S.C. § 1441(a) because the alleged conduct giving rise to this action occurred on a federal enclave.

#### A. Federal Officer Removal

9. Removal is proper under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. 28 U.S.C. § 1442 provides for removal of civil actions against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

10. Federal officer removal rights under section 1442 are much broader than other removal rights, and section 1442 is to be interpreted broadly in favor of removal. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal.").

Indeed, given the importance to the federal government of protecting federal officers and their agents, federal officers can remove even if a plaintiff could not have filed in federal court; removals under section 1442 are not subject to the well-pleaded complaint rule; and a federal officer or agency defendant can unilaterally remove a case under section 1442 without consent from other defendants in the case.  *Durham*, 445 F.3d at 1253.

11.     Removal is appropriate where, as here, a defendant demonstrates that: (1) it is a "person" within the meaning of the statute; (2) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (3) it can assert a "colorable federal defense."  *Durham*, 445 F.3d at 1251 (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) and *Mesa v. California*, 489 U.S. 121, 124–25, 131-35 (1989)).  Tetra Tech meets all of these elements and, therefore, is entitled to remove this action.

12.     First, Tetra Tech is a "person" under section 1442(a)(1).  It is well-settled that corporations such as Tetra Tech are considered "persons" within the meaning of the statute.  *See Isaacson v. Dow Chemical Co.*, 517 F.3d 129 (2d Cir. 2008).

13.     Second, Tetra Tech was "acting under" the direction of the Navy within the meaning of section 1442(a)(1) when it contracted with the Navy and performed radiological remediation services at HPNS.  For purposes of satisfying this element, "precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."  *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007).  While Tetra Tech denies any liability for Plaintiff's claims, there is no dispute that the Navy contracted with Tetra Tech to remediate hazardous and radioactive waste at HPNS.[1]  (*See, e.g.*, Compl., ¶¶ 5-6, 19, 51, 85.)   Further, the Complaint makes reference to the oversight of the Navy in connection with the remediation. (*See, e.g.*, *id.*, p. 2, n. 1; ¶¶ 49, 73.)  Moreover, because Plaintiff's claims against Tetra Tech arise from the remediation services it provided while under contract with the Navy, there is a clear causal nexus between Plaintiff's claims and Tetra Tech's actions.  The fact that Tetra Tech's remediation work at HPNS derived

---

[1]  To the extent necessary, Tetra Tech will provide additional briefing and evidentiary support for removal on the grounds asserted herein.

-4-

DEFENDANT TETRA TECH EC, INC.'S NOTICE OF REMOVAL OF ACTION

15116900.1

from its contract with the Navy, and Plaintiff's alleged injuries stemmed from Tetra Tech's remediation work while under contract with the Navy, is sufficient to establish the required causal nexus. *Willingham v. Morgan*, 395 U.S. 402, 409 (1969).

14. Third, Tetra Tech's derivative sovereign immunity and government contractor defenses are colorable federal defenses to Plaintiff's claims. To be colorable, the defense is not required to be "clearly sustainable," and "[t]he officer need not win his case before he can have it removed." *See Willingham*, 395 U.S. at 407.

15. With regard to derivative sovereign immunity, Tetra Tech has a colorable basis for asserting this defense to Plaintiff's claims under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940) and *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Under this defense, Tetra Tech is immune from liability for its work performed under Navy contract. *See Yearsley*, 309 U.S. at 20–21 ("if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will"); *see also Campbell-Ewald*, 136 S. Ct. at 673 n.7 (disagreeing with Court of Appeals to the extent that it described *Yearsley* as applying solely to claims arising out of property damages caused by public works projects). Tetra Tech's assertion of the derivative sovereign immunity defense will establish that Tetra Tech's contract with the Navy was "validly conferred," and that Tetra Tech performed the Navy contract in accordance with the Navy's instructions and directions.

16. With regard to the government contractor defense, Tetra Tech has a colorable basis for asserting the defense in this action under *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). The Supreme Court in *Boyle* held that state law, which would hold a government contractor liable, will be displaced when (1) the subject matter involves "uniquely federal interests;" and (2) "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law' or the application of state law would 'frustrate specific objectives' of federal legislation . . . ." *Id.*, 487 U.S. at 505. This action presents an issue involving "uniquely federal interests," that is Tetra Tech's contractual obligations to the Navy and actions taken in the course of performing the contract, and imposition of liability under state tort law for Tetra Tech's

performance of the Navy contracts would significantly conflict with that federal interest. 487 U.S. at 504-05, 507. In addition, in further satisfaction of the requirements for establishing the government contractor defense, Tetra Tech will demonstrate that its remediation work was approved by the Navy according to precise specifications; that Tetra Tech's services ultimately conformed to those specifications; and that Tetra Tech had no information that the Navy did not already have about the inherent dangers associated with radiological remediation at HPNS. *Id.*, 487 U.S. at 511-12; *see Crawford v. Nat'l Lead Co.,* 784 F. Supp. 439, 445 n.7 (S.D. Ohio 1989) (noting "the defense is viable with regard to performance contracts.") (citations omitted).

### B. Federal Enclave Jurisdiction

17. The federal enclave doctrine provides a second basis for removal. Article 1, Section 8, Clause 17 of the United States Constitution grants Congress the power to "exercise exclusive legislation in all cases whatsoever" over all places purchased with the consent of a state "for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." *Swords to Plowshares v. Kemp*, 423 F.Supp.2d 1031, 1034 (N.D. Cal. 2005). Federal enclaves include military areas, such as naval shipyards like HPNS. *Scott v. Does 1 through 100*, CV 12–06235 SJO (MANx), 2012 WL 13013026, *2 (C.D. Cal. Oct. 25, 2012); *see also Allison v. Boeing Laser Technical Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012) ("These enclaves include numerous military bases, federal facilities, and even some national forests and parks.") and *Celli v. Shoell*, 995 F.Supp. 1337, 1341 (D. Utah 1998) (taking judicial notice that air force base was federal enclave).

18. "[F]ederal enclaves are under the exclusive jurisdiction of the United States, meaning the property and activities of individuals and corporations within that territory are also under federal jurisdiction." *Swords to Plowshares*, 423 F.Supp.2d at 1034. "As a result, actions arising from events that take place in federal enclaves may be removed to the corresponding federal court." *Scott*, CV 12–06235 SJO (MANx), 2012 WL 13013026, *2 (C.D. Cal. Oct. 25, 2012); *Durham*, 445 F.3d at 1250 ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'").

19. HPNS is a federal enclave. There is no dispute that HPNS was owned by the

-6-
DEFENDANT TETRA TECH EC, INC.'S NOTICE OF REMOVAL OF ACTION

15116900.1

federal government when Tetra Tech performed remediation services under Navy contract at the property; nor is there any dispute that the vast majority of HPNS remains under federal government ownership today.  The area of San Francisco known as HPNS was acquired by the United States for use by the Navy as a shipyard beginning in 1939.  (*See, e.g.*, Cal. Stats. 2009, c. 203 § 2(c); *see also* Compl., ¶ 38.)  While the area of HPNS known as "Parcel A" was transferred to the City of San Francisco in connection with the redevelopment of the area, nearly all of the remaining land in HPNS is still owned by the United States.  (*See, e.g.*, Cal. Stats. 2009, c. 203 § 2(a) (noting federal ownership of Hunters Point Naval Shipyard lands); s*ee also* Compl., ¶ 53; Compl., p. 2, n. 1 ("While a small percentage of SF Shipyards, including the plot of land known as Parcel A, is no longer considered part of the Superfund Part, the vast majority remains under U.S. Navy purview.").)

20.     The crux of Plaintiff's claims against Tetra Tech is that Tetra Tech failed to properly remediate toxic and radioactive waste at HPNS while under contract with the Navy, allegedly misrepresented and/or failed to disclose the continuing toxic nature of the site, and that the allegedly toxic nature of the site continues today, purportedly impacting the value of Plaintiff's home located on Parcel A.  (*See, e.g.*, Compl., ¶¶ 1, 5, 17-19, 109-186.)  Accordingly, the allegedly continuing events that form the basis of Plaintiff's claims occurred on the HPNS federal enclave.  *See In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012) ("the jurisdiction of the federal court depends upon . . . the locus in which the claim arose.").

21.     Because the alleged conduct giving rise to Plaintiff's claims occurred on a federal enclave, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**V.      COMPLIANCE WITH REMOVAL PROCEDURE**

22.     In accordance with 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and orders on file in the state court are attached hereto.  (*See* Exs. A-C.)

23.     Tetra Tech's Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because Tetra Tech is filing this Notice of Removal within thirty days of receipt, through service, of a copy of the initial pleading setting forth the claim for relief.

15116900.1

24.     Tetra Tech is not required to obtain the consent of any other defendants in this action in order to remove this action in its entirety pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981).

25.     Tetra Tech has obtained consent from the other served defendants to remove the action pursuant to 28 U.S.C. § 1441(a) on the ground that the alleged conduct giving rise to this action occurred on a federal enclave.  The undersigned counsel avers that all named defendants who have been served as of this filing consent to removal of this action.  *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1224-25 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient [for removal].").

26.     Tetra Tech will promptly give all adverse parties written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).  Tetra Tech will also promptly file a copy of this Notice of Removal with the Clerk of the California Superior Court for the County of San Francisco where the action is currently pending.

WHEREFORE, Tetra Tech hereby removes this action from the Superior Court of California, County of San Francisco to the United States District Court for the Northern District of California.

DATED:  January 14, 2019                    HANSON BRIDGETT LLP

By: ___*/s/ Megan Oliver Thompson*___
DAVINA PUJARI
MEGAN OLIVER THOMPSON
GEOFFREY R. PITTMAN
Attorneys for Defendants TETRA TECH, INC. and TETRA TECH EC, INC.

-8-
DEFENDANT TETRA TECH EC, INC.'S NOTICE OF REMOVAL OF ACTION
15116900.1